GARSON v. ELWELL–PARKER ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit.   March 13, 1923.)

No. 158.

Patents ⬅328—1,337,400 for a crane held invalid for want of novelty.

    The Garson patent, No. 1,337,400, for crane in which hoisting rope is used to raise boom, and boom is automatically locked by interengaging members between its free end and the pivot, *held* invalid for want of novelty, in view of the prior art.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Thorvald N. Garson against the Elwell-Parker Electric Company for infringement of the Garson patent, No. 1,337,400, applied for September 20, 1918, granted April 20, 1920. Decree for defendant. Plaintiff appeals. Affirmed.

Charles W. Mortimer, of New York City, for appellant.

Justin W. Macklin, of Cleveland, Ohio, and Everett N. Curtis, of New York City, for appellee.

Before MANTON and MAYER, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge.   The inventor says that the patent in suit relates particularly to a crane which forms the subject-matter of an earlier patent, No. 1,228,659, granted to him on June 5, 1917; its characteristic being the provision of a single hoisting rope from the load and boom, two interengaging members being located at the base of the boom for automatically locking the latter in an elevated position to permit the lowering of the hoisting rope. He does not sue on the earlier patent. The object of the present improvement is said to be to provide a heavy-duty crane of the class, for instance, used on a locomotive or heavy truck; cranes capable of handling a load of five tons or more. A characteristic of the present improvement is

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

said to be the combination of the mast and boom and interengaging boom locking members in such relationship that the hook in its reaction upon the locking members is a lever of this class only, and thus the strain on the locking members is reduced to a minimum; and it is said that, when the interengaging locking members consist of a ratchet and pawl, as in the embodiment of the invention described, the size of the ratchet teeth and pawl may be largely increased over the corresponding parts when acted upon by the boom as a lever of the first class. In the patent in suit, and in the previous patent granted to the appellant, there is used a ratchet and pawl mechanism connecting the mast to the boom, being attached to the boom between its pivot and free end.

The defenses interposed are invalidity of the patent and noninfringement. We need only consider the first—that is, the invalidity of the patent—for we think what was shown in the prior art anticipated what the inventor is said to have accomplished. The patent in suit has but one claim and reads as follows:

"In a crane, the combination with a support of a hoisting drum and driving means therefor, a boom pivotally mounted upon the support, a hoisting rope connected with the drum and led over the end of the boom, means including the hoisting rope for raising the boom, and two interengaging members, one carried by said support and one carried by the boom, and disposed intermediate the pivotal connection of the boom and the free end of the latter, for automatically locking the boom in its elevated position, whereby the boom will react upon the said interengaging members as a lever of the second class."

In reference to the prior patent granted to the appellant, it was apparent that he recognized the inherent mechanical weakness of the first patented structure, particularly that the short lever at the base could not support heavy loads at the far end of the boom. He emphasizes the whole point of the patent in suit by his reference to the particular use, position, and form of the ratchet and pawl which he shows in this patent and says:

"As in the embodiment of the invention hereinafter described the size (and hence strength) of the ratchet teeth and pawl may be largely increased over the corresponding parts when acted upon by the boom as a lever of the first class."

This patent was allowed, because it was thought the two interengaging members between the pivotal connection of the boom and its free end constitute a difference over his prior patent and upon which the single claim was allowed. But we think that, in view of the general state of the prior art, it required no invention to select an old mechanical expedient as a particular means of supporting a boom, as used in many forms, such as cranes. It appears that the identical booms do appear in the patents referred to as the prior art, and disclose the latching means between the base of the boom and the outer end of the boom. Cranes had been used of various forms and types. They had been mounted on tracks, ships, and vehicles of all sorts, and had been used to raise a load, and move it laterally, and place it wherever desired within the reach of the crane. Some illustrations are building cranes, ship cranes, and locomotive cranes. These de-

vices have invariably a means for holding a crane in its raised position while lowering the load. Indeed, this is an essential to functioning.

The Hammond patent, No. 940,146, applied for June 12, 1908, and granted November 16, 1919, is a hoisting apparatus comprising a base, a jib pivoted thereto, a hoisting device carried by the jib and operating to swing the same on a pivot, a latch bar pivoted to the base, and a keeper therefor on the jib. In the patent granted to Hladky, No. 981,561, applied for July 23, 1910, and granted January 10, 1911, for spreader crane, the claim provided for a crane comprising "a base, a standard, a rocking boom, and a housing surrounding said standard composed of hinged sections adapted to swing open and permit of the disassembling of said base and standard, and means for anchoring the housing against revoluble movement." This device in operation demonstrates continued pull on the cable after the hook or form engages the pin and will raise the boom.

All the elements of appellant's device are present, except the implication of the automatic locking in different positions; but the locking and reconnection are precisely the same as in the patent, except for automatically doing so. Its purposes, function, and elements are identical with that of the claim in suit, with the single possible point in favor of the claim of automatic locking which is found in the prior art. The patent to Hitchcock, No. 456,332, applied for November 5, 1890, and granted July 21, 1891, was for a hoisting apparatus used for heavy loads. The pulling is on the lifted chain by the use of a hoisting engine, which means a power-driven drum, for use in hoisting apparatus. It has two interengaging members as latching means between the pivot and the rear end of the boom, one carried by the support and one carried by the boom, clearly showing a disposed intermediate free end·of the boom and its pivotal connection, and for automatically locking the boom in its elevated position. The function of these interengaging members is to drop the load near the base of the boom, when the boom is latched in a raised position as does the device of the patent in suit.

In view of these disclosures of the prior art, we find that the inventor discloses nothing new or novel that rises to the dignity of invention, and the patent in suit must be held void.

Decree affirmed.